IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FINITE STATE MACHINE LABS,
INC.,
                Plaintiff,

-vs-

SPECTRACOM CORPORATION,
OROLIA USA, INC., OROLIA S.A.,
                Defendants.

CAUSE NO.:
A-17-CV-01040-SS

## ORDER

BE IT REMEMBERED on the 21st day of August 2018, the Court held a hearing in the above-styled cause, and the parties appeared by and through counsel. Before the Court are Plaintiff Finite State Machine Labs, Inc. (FSM Labs)' Renewed Motion for Preliminary Injunction [#100], Defendants Orolia USA, Inc., formerly known as Spectracom Corporation, and Orolia S.A. (collectively, Orolia)'s Response [#103] in opposition, and FSM Labs' Reply [#108] thereto. Having considered the documents, the case file as a whole, arguments of counsel at the hearing, and the applicable law, the Court enters the following opinion and orders.

### Background

This case arises from a failed business relationship between two companies in the computer time synchronization business. FSM Labs and Orolia independently developed and sold time synchronization products before collaborating in 2011. After years of working together, Orolia, the larger of the two entities, initiated discussions to acquire FSM Labs. The discussions failed, as did the working relationship soon thereafter. The parties dispute their liabilities stemming from the failed relationship.

In March 2011, Orolia and FSM Labs entered into a non-exclusive reseller agreement. *See* Compl. [#10-1] Ex. A (Reseller Agreement). Under the Reseller Agreement, FSM Labs appointed Orolia as a licensed reseller of certain software products, including FSM Labs' TimeKeeper Client and TimeKeeper Server. *Id.* at ¶ 2, Schedule 4 (listing Licensed Products). The agreement prohibited Orolia from disclosing FSM Labs' confidential information or "market[ing], distribut[ing], sell[ing], develop[ing], or caus[ing] to be developed any derivative software or work, or any other software program based upon or competitive with the Licensed Products or any FSM Labs trade secrets or Confidential Information of FSM Labs." *Id.* at ¶ 2.C.

In April 2014, the parties executed a second agreement to jointly develop hardware products for use in the enterprise timing market. *Id.* [#10-2] Ex. B (Teaming Agreement). The resulting VelaSync product was a hardware device loaded with FSM Labs' timing software. *See* Compl. [#10] at ¶ 4. Pursuant to the Teaming Agreement, Orolia and FSM Labs agreed not to disclose the other's confidential information to third parties or to use the same "for any purpose other than for the proper fulfillment of the purpose of this Agreement." *Id.* at ¶ 12.1.

After five years of successfully working together, Orolia initiated discussions about the possibility of acquiring FSM Labs. *See* Compl. [#10] at ¶ 5. In April 2016, the parties entered into a nondisclosure agreement to facilitate the exchange of confidential information in furtherance of these discussions. *Id.*; *see also* Compl. [#10-4] Ex. C (Nondisclosure Agreement). The parties exchanged an offer and counter offer before ultimately deciding, on August 1, 2016, to continue their existing working relationship unchanged. *See* Joint Stip. [#114-1] at 1–2.

Unfortunately, the business relationship deteriorated after the failed acquisition discussions. On September 25, 2017, FSM Labs notified Orolia of alleged breaches of Reseller Agreement related to primary support under as well as alleged breaches under the Teaming

2

Agreement. *See* Compl. [#10-5] Ex. D (Reseller Agreement Default Notice); Compl. [#10-6] Ex. E (Teaming Agreement Default Notice). The parties exchanged additional correspondence on these alleged breaches. *See* Compl. [##10-7, 10-8] Exs. F, G (Default Notice Correspondence).

FSM Labs filed this lawsuit on November 2, 2017, asserting claims for unfair competition by misappropriation, state and federal trade secret misappropriation, unfair competition by breach of confidence, and breach of contract. *See* Compl. [#10] at ¶¶ 80–158. Orolia filed counterclaims for breach of contract, tortious interference with business relations, and declaratory judgment on the parties' rights and obligations under their agreements. *See* Countercl. [#21-1] at ¶¶ 27–42. Subsequently, on November 15, 2017, FSM Labs terminated the Reseller Agreement and Teaming Agreement. *See* Mot. Prelim. Inj. [#100-6] Ex. E (Termination Notice).

On December 7, 2017, FSM Labs moved for a preliminary injunction. *See* Mot. Prelim. Inj. [#16]. The motion was in part premised on Orolia's development of a new software product FSM Labs alleges competes with its own products in violation of the parties' agreements. *See* Br. [#18-1] at 1. In supplemental briefing, FSM Labs identified Orolia's PRISMA product as the competing product it sought to enjoin Orolia from marketing, distributing, and selling. *See* Supp. Br. [#57] at 1–5. At the first preliminary injunction hearing, FSM Labs further clarified there are two PRISMA products, PRISMA VelaSync and PRISMA Compliance. Hrg. Tr. [#80] at 20:11–16. The Court denied FSM Labs' request for a preliminary injunction, but did permit expedited discovery by both parties. *See* Order of Feb. 6, 2018 [#65].

Documents produced in discovery confirm Orolia began pursuing an end-to-end timing network ecosystem, referred to internally as the Swift project, in 2016. *See e.g.,* Mot. Prelim.

Inj. [#100-10] Ex. I (Orolia Presentation). PRISMA VelaSync and PRISMA Compliance were part of the Swift project. *See* Mot. [#103-2] Onyan Decl. at ¶¶ 27–41. Orolia started developing PRISMA Compliance in April 2017. *See* Mot. [#96-4] Onyan Decl. at ¶ 28. While Orolia planned to build PRISMA VelaSync before FSM Labs terminated the parties' agreements, it did not begin development on the project until December 2017 or early January 2018. *Id.* at ¶¶ 34–37, 41.

FSM Labs now renews its motion for a preliminary injunction. *See* Mot. Prelim. Inj. [#100]. The requested relief is to enjoin Orolia from (1) marketing, distributing, licensing, and selling the PRISMA VelaSync and PRISMA Compliance products, as well as any other products from the Swift project; (2) marketing, distributing, licensing, and selling FSM Labs' TimeKeeper products; (3) providing support services to customers for FSM Labs' TimeKeeper products; and (4) causing FSM Labs' customers from doing business with FSM Labs. *See* Mot. Prelim. Inj. [#100-30] (Proposed Order). The motion is fully briefed and ripe for consideration.

## Analysis

### I. Legal Standard—Preliminary Injunction

A movant is entitled to the "extraordinary remedy" of a preliminary injunction only if he establishes (1) a "substantial likelihood" that he will succeed on the merits, (2) a substantial threat that he will be irreparably injured if the injunction does not issue, (3) that the threatened injury outweighs any harm resulting from the grant of the injunction, and (4) that the injunction "will not disserve the public interest." *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (citation omitted). The movant carries "a heavy burden of persuading the district court that all four elements are satisfied," and failure to carry the burden on any one of the elements will result

4

in a denial of injunctive relief. *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (citation omitted).

## II. Application

As explained below, FSM Labs has failed to show a substantial likelihood of success on the merits of its asserted claims and therefore the Court concludes a preliminary injunction is not appropriate at this time.

### A. Breach of Contract

The Reseller Agreement, Teaming Agreement, and Nondisclosure Agreement are governed by Texas, New York, and Delaware law, respectively. *See* Reseller Agreement at ¶ 10.J; Teaming Agreement at ¶ 15.6; Nondisclosure Agreement at ¶ 16. To prevail on a breach of contract claim, FSM Labs must establish, among other elements, that Orolia breached an obligation under the agreement. *See Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018) (listing element of breach of contract under Texas law to include "breach of the contract by the defendant"); *Kasada, Inc. v. Access Capital, Inc.*, 01 CIV. 8893 (GBD), 2004 WL 2903776, at *21 (S.D.N.Y. Dec. 14, 2004) (reciting similar requirement for breach of contract under New York law); *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (reciting similar requirement for breach of contract under Delaware law).

FSM Labs asserts Orolia breached ¶ 2.C of the Reseller Agreement by the activities it engaged in on the Swift project, and Orolia used FSM Labs' confidential information and trade secrets for purposes beyond the scope of the parties' agreements to advance its Swift project product line in violation of ¶¶ 2.C and 8.C of the Reseller Agreement ¶ 12.1 of the Teaming Agreement, and ¶ 6 of the Nondisclosure Agreement. *See* Mot. Prelim. Inj. [#100] at 6–7.

As noted above, Orolia agreed in the Reseller Agreement not to "market, distribute, sell, develop, or cause to be developed any derivative software or work, or any other software program based upon or competitive with the [TimeKeeper Server and TimeKeeper Client software products] or any FSM Labs trade secrets or Confidential Information of FSM Labs." Reseller Agreement at ¶ 2.C. FSM Labs has not shown Orolia's development and marketing of the PRISMA Compliance software or the PRISMA VelaSync hardware violates the non-compete provision of the Reseller Agreement. Neither PRISMA product appears to be based upon or competitive with FSM Labs' TimeKeeper Server and TimeKeeper Client software.[1]

Orolia also agreed not to use FSM Labs' confidential information and trade secrets beyond the scope of the parties' agreements. *See* Reseller Agreement at ¶¶ 2.C, 8.C; Teaming Agreement at ¶ 12.1; Nondisclosure Agreement at ¶ 6. Orolia refutes using any of FSM Labs' confidential information or trade secrets to develop its PRISMA products. *See* Resp. [#66-1] Onyan Decl. at ¶ 8; Resp. [#103-2] Onyan Decl. at ¶¶ 29–32. While FSM Labs has offered circumstantial evidence it believes supports its allegations, the allegations are simply too conjectural to show a substantial likelihood of FSM Labs' success on its breach of contract claim.

**B.    Unfair Competition by Misappropriation**

A claim of unfair competition by misappropriation under Texas law requires: (i) the creation of plaintiff's product through extensive time, labor, skill and money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition because defendant is burdened with little or none of the expense incurred by the

---

[1] In its reply, FSM Labs also accuses Orolia's "Swift Time Client" and "Swift VelaSync Grandmaster" of breaching the non-compete provision of the Reseller Agreement. *See* Reply [#108] at 3. However, the cited evidence is inconclusive of the functionality of the accused products and whether the products are based upon or competitive with the TimeKeeper Server and TimeKeeper Client, as required by the Reseller Agreement.

plaintiff, and (iii) commercial damage to the plaintiff. *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 839 (5th Cir. 2004). A plaintiff must also show an illegal act by the defendant, such as a violation of criminal law or an independent substantive tort, which interfered with the plaintiff's ability to conduct its business. *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000). Texas misappropriation law is "specially designed to protect the labor—the so-called 'sweat equity'—that goes into creating a work." *Dresser-Rand*, 361 F.3d at 839 (quoting *Alcatel USA, Inc., v. DGI Techs., Inc.*, 166 F.3d 772, 778 (5th Cir.1999)).

FSM Labs contends Orolia improperly used FSM Labs' TimeKeeper software and VelaSync design to gain an unfair advantage with its competing PRISMA products. Mot. Prelim. Inj. [#100] at 7–8. In support, FSM Labs cites Orolia's work on the Swift project before the parties' agreements were terminated, Orolia's use of overlapping personnel to support FSM Labs' software and develop the Swift project, and Orolia's alleged access to FSM Labs' TimeKeeper software. *Id.* at 4–5, 7–8.

The evidence presented does not demonstrate Orolia used the TimeKeeper products to gain unfair advantage. The timing of Orolia's development at best shows it had access to FSM Labs' software products. However, Orolia refutes it ever requested or obtained access to the proprietary TimeKeeper source code underlying these products.[2] *See* Resp. [#38-1] Onyan Decl. at ¶ 15. As noted at the hearing, the Court is troubled by Orolia's use of the same personnel working with FSM Labs to develop Orolia's Swift project. Use of overlapping personnel increases the risk any trade secrets or confidential information obtained from FSM Labs could be misappropriated into Orolia's own products. This alone, however, does not establish improper use of FSM Labs' product to gain a special advantage.

---

[2] Indeed, FSM Labs conceded at the hearing it has only provided Orolia with publicly available portions of the source code, not proprietary portions of the same.

The law does not prevent competition, only unfair competition by misappropriation. Based on the evidence presented thus far, FSM Labs has not shown a likelihood of success on its claim for unfair competition by misappropriation.

## C.      Trade Secret Misappropriation

Under the Texas Uniform Trade Secrets Act (TUTSA) and the Defend Trade Secrets Act (DTSA), a trade secret is defined as information the owner has taken reasonable measures to keep secret and which derives independent economic value from not being generally known or readily ascertainable through proper means. TEX. CIV. PRAC. & REM. CODE § 134A.002(6); 18 U.S.C.A. § 1839(3).   Misappropriation includes "(B) disclosure or use of a trade secret of another without express or implied consent by a person who (i) used improper means to acquire knowledge of the trade secret." TEX. CIV. PRAC. & REM. CODE § 134A.002(6); 18 U.S.C.A. § 1839(5).

FSM Labs argues Orolia misappropriated its trade secrets in violation of TUTSA and DTSA. *See* Mot. Prelim. Inj. [#100] at 8–9.   FSM Labs compiled a list of its alleged trade secrets after the first preliminary injunction hearing. *See* Mot. Prelim. Inj. [#100-8] Ex. G (FSM Labs Supp. Discovery Responses) at 9–10.   According to FSM Labs, Orolia used these trade secrets without consent or knowledge in order to further Orolia's competing PRISMA products and Swift project. *See* Mot. Prelim. Inj. [#100] at 9.

As with the previous claims, FSM Labs has not demonstrated a substantial likelihood of success on its trade secret claims.   To begin, the alleged trade secrets largely lack sufficient specificity.   FSM Labs uses generic terms like components, information, parts, process, testing, training, and deficiencies to define its alleged trade secrets. *See* FSM Labs Supp. Discovery Responses at 9–10.   Problems arising from such vague language are illustrated by FSM Labs'

own employees' inability to explain or clarify the alleged trade secrets during their depositions. *See* Resp. [#103] at 4–6, (citing deposition testimony of Cort Dougan and Victor Yodaiken). FSM Labs' compilation of its alleged trade secrets is a commendable start, but insufficient for issuing a preliminary injunction at this stage of the case.

Another problem with FSM Labs' alleged trade secrets is the inclusion of information that is readily ascertainable through proper means. For instance, FSM Labs alleges the "Components/parts/BOM" for the VelaSync product, "[b]usiness information compiled and analyzed by FSM Labs regarding the market for time sensitive network technology," and "[h]ow Timekeeper Compliance works" are all trade secrets. *See* FSM Labs Supp. Discovery Responses at 9–10. However, the record reflects these items are readily ascertainable through proper means. At the hearing, for example, FSM Labs' Chief Technology Officer demonstrated that the VelaSync product could be easily opened to reveal the various off-the-shelf hardware components comprising the VelaSync product. FSM Labs' Chief Executive Officer also conceded during his deposition at least some of the alleged trade secret business information could be independently determined by market research. *See* Resp. [#103-1] Ex. B (Yodaiken Dep. Tr.) at 79:19–80:8. As another example, some functionality of TimeKeeper Compliance is described in the product's publicly available user manual. *Id.* at 121:1–122:12. Such readily ascertainable information cannot constitute a trade secret under TUTSA and DTSA. *See* TEX. CIV. PRAC. & REM. CODE § 134A.002(6) (requiring trade secrets be information "not being readily ascertainable through proper means"); *see* 18 U.S.C.A. § 1839(3) (same).

Finally, FSM Labs' purported evidence of misappropriation is also lacking. FSM Labs argues Orolia misappropriated knowledge on how FSM Labs' TimeKeeper software stores data and represents it in its log files in developing the Swift Time Client, TimeKeeper's superior

implementation of clock disciplining, FSM Labs' off-the-shelf implementation approach from VelaSync, TimeKeeper's management messages and log files, and FSM Labs' source code. *See* Reply [#108] at 3–4. A closer look at the evidence, including the evidence cited in FSM Labs' briefing and presented at the hearing, does not lead the Court to the same conclusion. Much of the cited evidence is only loosely tied to FSM Labs' alleged trade secrets or unprotectable portions of the same. More importantly, the record is inconclusive as to whether Orolia actually used the trade secrets. Orolia disputes it used FSM Labs' trade secrets or confidential information to develop its own products. *See* Resp. [#103] at 7–8. Put simply, FSM Labs has failed to present convincing evidence of misappropriation of protectable trade secrets.

On the record currently before the Court, FSM Labs has not shown a substantial likelihood it will succeed on the merits for the claims pressed in its request for a preliminary injunction. Because both parties independently operated in the computer time synchronization space before their business relationship, the Court is particularly hesitant to issue a preliminary injunction without convincing evidence such an extraordinary remedy is warranted. The ruling today is not intended to foreshadow the success of any claims asserted in this case. Until this case is resolved, Orolia shall file a sealed notice with the Court every sixty (60) days to update on sales of its PRISMA products and any other products arising from the Swift project.

## Conclusion

For the reasons explained above, the FSM Labs' request for a preliminary injunction is denied without prejudice to refile at a later time, if appropriate.

Accordingly,

IT IS THEREFORE ORDERED that Plaintiff FSM Labs' Renewed Motion for Preliminary Injunction [#100] is DENIED without prejudice to refile at a later time; and

IT IS FINALLY ORDERED that Defendant Orolia shall file a notice every sixty (60) days to notify the Court of any sales related to its PRISMA products and any other products arising from the Swift project.

Signed this 30ᵗʰ day of August 2018.

_____
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE